Erica C. Mirabella
MIRABELLA LAW, LLC
132 Boylston Street, 5th Floor
Boston, MA  02116
(617) 580-8270
(617) 583-1905 (fax)
erica@mirabellaLLC.com

*Counsel for Plaintiff*
[Additional Counsel listed on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIE MAYER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| WAL-MART STORES, INC., | Jury Trial Demanded |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Jennie Mayer ("Plaintiff"), through her undersigned attorneys, brings this lawsuit against Wal-Mart Stores, Inc. (hereinafter "Defendant" or "Wal-Mart") as to her own acts upon personal knowledge, and as to all other matters upon information and belief.  In order to remedy the harm arising from Defendant's illegal conduct, which has resulted in unjust profits, Plaintiff bring this action on behalf of Massachusetts consumers specifically defined herein, who purchased Wal-Mart "Spring Valley" Echinacea.

1

**INTRODUCTION**

1.      On February 2, 2015, New York Attorney General Eric T. Schneiderman sent a

demand letter to Wal-Mart's CEO Michael G. Archbold, ordering Wal-Mart to immediately

cease and desist engaging in the sale of adulterated and mislabeled herbal dietary supplements.

These products included various Wal-Mart "Spring Valley" supplements, including Wal-Mart

"Spring Valley" Echinacea ("the Misbranded Product"), that either could not be verified to

contain the labeled substance, or which were found to contain ingredients not listed on the

labels.

2.      Attorney General Schneiderman requested that Wal-Mart provide detailed

information relating to the production, processing and testing of herbal supplements sold at

their stores, as well as set forth a thorough explanation of quality control measures in place.

3.      The Attorney General's letter expressly warned Defendant that, "contamination,

substitution and falsely labeling herbal products constitute deceptive business practices and,

more importantly, present considerable health risks for consumers."

4.      The letter came as DNA testing, performed as part of an ongoing investigation

by the Attorney General's Office, revealed that the products purchased by Plaintiff in this cause

was negative for the ingredient listed on the front of the package.

5.      An expert in DNA barcoding technology, Dr. James A. Schulte II of Clarkson

University in Potsdam, N.Y., was hired by the Attorney General's office to perform the testing.

6.      DNA barcodes are short genetic markers in an organism's DNA and are used to

identify it as belonging to a particular species. Barcodes provide an unbiased, reproducible

method of species identification. Barcodes can be used to determine the exact plant species

being tested.

7.      The Misbranded Product tested negative for the advertised package contents according to the testing performed. In reality, it contained no echinacea, nor any plant material of any sort.

8.      Plaintiff relied on Defendant's representations that the Misbranded Product was what it purported to be: a supplement containing echinacea.

9.      Studies conducted by the Centre for Biodiversity Genomics at the University of Guelph and others have previously alerted the dietary supplement industry to the fact that it is not providing the public with authentic products without substitution, contamination or fillers.

10.     According to Attorney General Schneiderman:

"this investigation makes one thing abundantly clear: the old adage 'buyer beware' may be especially true for consumers of herbal supplements," "The DNA test results seem to confirm long-standing questions about the herbal supplement industry. Mislabeling, contamination, and false advertising are illegal. They also pose unacceptable risks to New York families—especially those with allergies to hidden ingredients. At the end of the day, American corporations must step up to the plate and ensure that their customers are getting what they pay for, especially when it involves promises of good health."

11.     According to Arthur P. Grollman, M.D., Professor of Pharmacological Sciences at Stony Brook University, "this study undertaken by Attorney General Schneiderman's office is a well-controlled, scientifically-based documentation of the outrageous degree of adulteration in the herbal supplement industry."

12.     Using DNA barcoding technology to examine the contents of herbal supplements, the Attorney General focused on what appears to be Defendant's practice of substituting contaminants and fillers in the place of authentic product.

13.     The testing revealed that all of the retailers were selling a large percentage of supplements for which modern DNA barcode technology could not detect the labeled botanical substance.

14.     If the producers of herbal supplements fail to identify all the ingredients on a product's label, a consumer with food allergies, or who is taking medication for an unrelated

illness, is taking a potentially serious health risk every time a contaminated herbal supplement is ingested.

15.     Plaintiff did not purchase Defendant's supplements to assume these risks and would not have purchased Defendant's product if she had known they were contaminated and potentially dangerous.

16.     The Misbranded Product was and is worthless as a matter of law, failing to contain any of the advertised ingredients.  A full return of the purchase price is warranted for the purchases of this supplement.

## PARTIES

17.     Plaintiff Jennie Mayer is a resident of Waltham, Massachusetts, who purchased Defendant's misbranded and adulterated product in Massachusetts during the four (4) years prior to the filing of this Complaint (the "Class Period").  Specifically, Ms. Mayer purchased Defendant's misbranded and adulterated Wal-Mart "Spring Valley" Echinacea.

18.     Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business at 702 SW 8th Street, Bentonville, Benton County, Arkansas, 72716.

19.     Massachusetts law applies to all claims set forth in this Complaint because Plaintiff lives in Massachusetts and purchased Defendant's product here.  Also, Defendant sells products in Massachusetts.  The misconduct alleged herein was implemented in Massachusetts and has a shared nexus with Massachusetts.  The formulation and execution of the unlawful practices alleged herein occurred in, or emanated from, Massachusetts.  Accordingly, Massachusetts has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiff and all Class members.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed class;

(2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

21.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

22.     The Court has jurisdiction over the Massachusetts claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

23.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

24.     The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint occurred in Massachusetts, Defendant is authorized to do business in Massachusetts, has sufficient minimum contacts with Massachusetts, and otherwise intentionally avails itself of the markets in Massachusetts through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

25.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## FACTUAL ALLEGATIONS

26.     At various times in the last four years, Plaintiff Jennie Mayer purchased the Misbranded Product.

27.     In so doing, Plaintiff reasonably relied on the label of the Misbranded Product. That is, when Plaintiff purchased, Wal-Mart "Spring Valley" Echinacea, she believed she was purchasing a product containing nothing but echinacea.

28.     In reality, however, recent testing has revealed that the Misbranded Product contained no echinacea at all.

33.     A reasonable purchaser would believe that Defendant's Wal-Mart "Spring Valley" Echinacea actually contained echinacea.

35.     Plaintiff reasonably relied on Defendant's package labeling of its Misbranded Product.

36.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's Misbranded Product was misbranded and adulterated as set forth herein. Plaintiff would not have bought the Misbranded Product had she known the truth that the product contained none of the ingredients listed on the front of package label.

37.     As a result of Defendant's misrepresentations of content, Plaintiff and thousands of others in Massachusetts purchased the Misbranded Product at issue.

38.     Defendant's labeling as alleged herein is false and misleading and designed to increase sales of the product at issue.

39.     Under Massachusetts ALM GL ch. 93A, on February 6 2015, a written demand for relief, identifying the Plaintiff and the Class and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered by Plaintiff and the Class, was mailed and delivered to Defendant.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following classes:

> **Massachusetts Class**: All persons in the state of Massachusetts who, within the last four years, purchased Wal-Mart "Spring Valley" Echinacea.

41.     The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

42.     This action can be maintained as a class action because there is a well-defined

community of interest in the litigation and the proposed Class is easily ascertainable.

43.     Numerosity:  Based upon Defendant's publicly available sales data with respect to the Misbranded Product at issue, it is estimated that the Class numbers in the thousands and that joinder of all Class members is impracticable.

44.     Common Questions Predominate:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, for example:

a.     Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its Misbranded Product sold to consumers;

b.     Whether the Misbranded Product is worthless.

c.     Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

d.     Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

e.     Whether Defendant was unjustly enriched by their deceptive practices.

45.     Typicality:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Misbranded Product during the Class Period.  Defendant's unlawful, unfair, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct in violation of Massachusetts law.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

46.     Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

47.     Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

48.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to FED. R. CIV. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

49.     The prerequisites to maintaining a class action pursuant to FED. R. CIV. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

50.     Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

51.     For each of the five causes of actions herein alleged *infra*, Plaintiff hereby realleges and incorporates the foregoing paragraphs.

## CAUSES OF ACTION

## COUNT ONE

### Breach of Implied Warranty of Merchantability

52.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

53.     Under Massachusetts law, a good is merchantable only if it: (a) passes without objection in the trade under the contract description; (b) in the case of a fungible good, is of fair average quality within the description; (c) is fit for the ordinary purposes for which such goods are used; (d) runs, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (e) is adequately contained, packaged, and labeled as the agreement may require; and (f) conforms to the promises or affirmations of fact made on the container or label if any. ALM GL ch. 106, § 2-314.

54.     Defendant's Misbranded Product violated the implied warranty of merchantability because misbranded goods are incapable of complying with ALM GL ch. 106, § 2-314(a)-(e).

55.     In addition, Defendant's Misbranded Product failed to conform to the promises or affirmations of fact made on the container or label of this product and thus breached the implied warranty of merchantability. Specifically, the labels on Defendant's Misbranded Product falsely promised and affirmed that the product contained echinacea.

56.     Defendant knowingly and intentionally mislabeled its Misbranded Product.

57.     Plaintiff and the Class would not have knowingly purchased and consumed a product that was adulterated and misbranded.

58.     Plaintiff and the Class would not have purchased and consumed the Misbranded Product if they had known that the Product failed to conform to the promises and affirmations of fact made on its container and label.

59.     By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for the Misbranded Product, together with punitive damages.

## COUNT TWO

### Breach of Express Warranty

60.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

61.     Defendant engaged in a scheme of offering misbranded and adulterated Misbranded Product for sale to Plaintiff and members of the Class by way of product packaging and labeling.

62.     In furtherance of its plan and scheme, Defendant prepared and distributed within Massachusetts and nationwide, via product packaging and labeling, statements that misleadingly and deceptively represented the composition and nature of its Misbranded Product.

63.     Plaintiff and the Class were the intended targets of such representations.

64.     Plaintiff and the Class reasonably relied on Defendant's representations.

65.     Defendant's affirmations of fact and/or promises relating to its Misbranded Product created express written warranties that the products would conform to Defendant's affirmations of fact and/or promises.

66.     Alternatively, Defendant's descriptions of its Misbranded Product became part of the bases of the bargains, creating express written warranties that the product purchased by Plaintiff and the other Class members would conform to Defendant's descriptions and specifications.

67.     In fact, the Misbranded Product purchased by Plaintiff and the Class did not so conform.

68.     As a result of the foregoing, Plaintiff and the other Class members have suffered damages in that the Misbranded Product was not as warranted by Defendant.

## COUNT THREE

### Negligent Misrepresentation

69.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

70.     Defendant had a duty to lawfully and truthfully label its Misbranded Product.

71.     By not falsely labeling its Misbranded Product, Defendant breached this duty.

72.     Defendant's misstatements were due, at least in part, to its negligence and carelessness.

73.     Plaintiff and the Class reasonably relied upon Defendant's misstatements to their detriment.

74.    By reason of the foregoing, Plaintiff and the Class have suffered damages in an amount to be proved at trial, together with punitive damages.

## COUNT FOUR

### Unjust Enrichment

75.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

76.    As a result of Defendant's unlawful and deceptive actions described above, Defendant was enriched at the expense of Plaintiff and the Class through the payment of the purchase price for the Misbranded Product.

77.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the Class.

78.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for the Misbranded Product, together with punitive damages.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, prays for judgment and relief against Defendant as follows:

A.    For an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

B.    For an order awarding, as appropriate, damages, restitution, and/or disgorgement to Plaintiff and the Class including all monetary relief to which Plaintiff and the Class are entitled pursuant to under Massachusetts law;

C.    For an order requiring Defendant to immediately cease and desist from selling the Misbranded Product in violation of law; enjoining Defendant from continuing to manufacture, deliver, offer to deliver, market, advertise, distribute, and sell the Misbranded Product in the unlawful manner described herein; and ordering Defendant to engage in corrective

action;

D.      For an order awarding attorneys' fees and costs;

E.      For an order awarding punitive damages;

F.      For an order awarding pre-judgment and post-judgment interest; and

G.      For an order providing such further relief as this Court deems just and
        proper.

Dated: February 6, 2015

Respectfully submitted

By: /s/ *Erica C. Mirabella*

Erica C. Mirabella
MIRABELLA LAW, LLC
132 Boylston Street, 5th Floor
Boston, MA  02116
Telephone: 617-580-8270
Facsimile: 617-583-1905
erica@mirabellallc.com

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone: 202-789-3960
Facsimile: 202-589-1813
charles@cuneolaw.com

Taylor Asen
CUNEO GILBERT & LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: 202-789-3960
Facsimile: 202-589-1813
tasen@cuneolaw.com

Dewitt M. Lovelace
Valerie Lauro Nettles
LOVELACE AND ASSOCIATES, PA
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
Facsimile: (850) 837-4093

dml@lovelacelaw.com
valerie@lovelacelaw.com

Ben F. Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

Richard R. Barrett
LAW OFFICE OF RICHARD R.
BARRETT, PLLC
2086 Old Taylor Road
Suite 1011
Oxford, Mississippi 38655
Telephone: 662-380-5018
Fax: 866-430-5459
rrb@rrblawfirm.net

Don Barrett
DON BARRETT, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: (662) 834-2488
Toll Free: (877) 816-4443
Fax: (662) 834-2628
donbarrettpa@gmail.com

Kenneth R. Shemin
SHEMIN LAW FIRM, PLLC
3333 Pinnacle Hills Parkway, Suite 603
Rogers, AR 72758
Telephone:  (479) 250-4764
Facsimile:  (479) 845-2198

Thomas P. Thrash
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201
Telephone:  (501) 374-1058
Facsimile:  (501) 374-2222

*Attorneys for Plaintiff*